UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHNNIE JABAAR WELLS,

Plaintiff,

v.

B. CATES, et al.,

Defendants.

Case No.: 1:25-cv-01456-EGC (PC)

**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION WITHOUT PREJUDICE FOR PLAINTIFF'S FAILURE TO STATE A CLAIM, FAILURE TO COMPLY, AND FAILURE TO PROSECUTE**

14-Day Objection Period

Clerk of the Court to Assign District Judge

Plaintiff Johnnie Jabaar Wells is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I. RELEVANT BACKGROUND**

Plaintiff initiated this action by filing a complaint on October 31, 2025. (Doc. 1.)

On October 1, 2026, the Court issued its First Screening Order. (Doc. 9.) Specifically, the Court found Plaintiff's complaint failed to state a cognizable constitutional claim against any named Defendant. (*Id*. at 4-10.) Plaintiff was ordered to file a first amended complaint, curing the deficiencies identified in the order, a notice stating he intended to stand on his complaint as screened, or a notice of voluntary dismissal within 21 days. (*Id*. at 11.)

More than 21 days, plus time for mailing, have elapsed since Plaintiff was served on October 1, 2026, with the First Screening Order. Because Plaintiff has failed to file a first amended complaint, the undersigned will recommend this action be dismissed for Plaintiff's failure to state a claim, failure to comply with orders, and failure to prosecute.

## II. SCREENING FINDINGS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted

inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation" (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**D. Plaintiff's Complaint and Its Claims**

Plaintiff names four California Correctional Institution (CCI) officials as defendants: Warden B. Cates, A-Yard Captain Bonffil, A-Yard Lieutenant Robinson, and A-Yard Sergeant Luna. (Doc. 1 at 1-2.) He seeks $150,000,000 in compensatory and punitive damages for "current and future harm and injury caused by the Defendant(s) negligence." (*Id*. at 6.)

The undersigned determined the following:

**B. Plaintiff's Claims**

In Claim I, Plaintiff cites the Eighth, Fourteenth, and Fifth Amendments and identifies the issue involved as "Cruel Conditions (ETS)," that is, exposure to environmental tobacco smoke. (Doc. 1 at 3.) Although Plaintiff checked the same "Other" box for Claim II, he provides no supporting facts, injury, or constitutional basis for that claim, and Claim III is blank. (*Id*. at 4-5.) The Court therefore treats the complaint as asserting a single claim.

***The Factual Allegations***

Plaintiff alleges that a CDCR policy implemented on July 1, 2005, bans the use of all tobacco products in CDCR prisons. (Doc. 1 at 3.) He contends correctional officers at CCI nonetheless bring chewing tobacco into the institution and dispose of it by spitting it into the trash or onto the ground, where inmates find it, dry it out, and smoke it, creating what Plaintiff describes as an "unhealthy and hazardous environment of second hand smoke." (*Id*.) Plaintiff alleges the warden, captain, lieutenant, and sergeant on A-Yard at CCI "failed their roles to enforce the policies and rules & regulations" designed to protect the health and safety of inmates and staff. (*Id*.)

Plaintiff asserts that the failure to follow the policy has caused him shortness of breath that has affected his asthma and his blood pressure, as well as mental and emotional anguish due to his relapse into smoking. (Doc. 1 at 3.) Plaintiff attaches a CDCR 602-1 grievance dated August 18, 2025; photocopies of what appear to be a chewing tobacco container and product packaging; a September 10, 2025, Office of Grievances decision referring his grievance for review as an allegation of staff misconduct; and prescription labels for an inhaler and another medication. (*Id*. at 7-13.)

***The Construed Claim***

The Court construes Plaintiff's complaint to assert an Eighth Amendment conditions of confinement claim based on exposure to environmental tobacco smoke (ETS) against Defendants Cates, Bonffil, Robinson, and Luna. Before commencing with its analysis, the Court provides Plaintiff with relevant additional information concerning his allegations.

<u>The Fifth Amendment</u>

Plaintiff cites the Fifth Amendment. The Due Process Clause of the Fifth Amendment applies only to the federal government; it does not apply to state officials. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States"). Each named Defendant is a state prison official employed at CCI. (Doc. 1 at 2.) Plaintiff therefore cannot state a Fifth Amendment claim against them.

The Fourteenth Amendment

Plaintiff also cites the Fourteenth Amendment but alleges no facts suggesting he was deprived of a protected liberty or property interest without due process. Where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A convicted prisoner's challenge to the conditions of his confinement arises under the Eighth Amendment. *See Farmer*, 511 U.S. at 832. Accordingly, the Court analyzes Plaintiff's claim under the Eighth Amendment.

Violations of Prison Policy and State Regulations

Plaintiff's claim rests largely on the premise that CCI staff violated CDCR's tobacco policy, and his grievance references provisions of Title 15 of the California Code of Regulations. (Doc. 1 at 3, 7.) Plaintiff is advised that a violation of prison policy or state regulations does not, in and of itself, support a claim under section 1983. Section 1983 provides a cause of action only for the deprivation of federally protected rights. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (state departmental regulations do not establish a federal constitutional violation); *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001); *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11-12 (E.D. Cal. Oct. 8, 2013); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009). Thus, the allegation that CCI staff violated the tobacco ban does not, by itself, state a claim. As explained below, however, the existence of such a policy is relevant to whether prison officials acted with deliberate indifference. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Eighth Amendment: Conditions of Confinement (ETS) – Legal Standards

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer*, 511 U.S. 825; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, a prisoner must demonstrate that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Johnson*,

217 F.3d at 733. A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A prisoner may state an Eighth Amendment claim based on exposure to ETS. *Helling*, 509 U.S. at 35. To satisfy the objective component, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. *Id*. That determination involves more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that exposure to ETS will actually cause injury; it also requires the court to assess whether society considers the risk "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*. at 36. The Eighth Amendment likewise reaches deliberate indifference to a prisoner's current health problems. *See id*. at 33. To satisfy the subjective component, the prisoner must show that prison officials were deliberately indifferent to the risk, which is determined in light of the officials' current attitudes and conduct. *Id*. at 36. The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id*.

Deliberate indifference is a higher standard than negligence or a lack of ordinary due care. *Farmer*, 511 U.S. at 835; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

<u>Eighth Amendment: Conditions of Confinement (ETS) – Analysis</u>

Liberally construing the complaint and accepting all facts as true, Plaintiff fails to state a cognizable Eighth Amendment claim against any named Defendant. First, and most significantly, Plaintiff fails to link any named Defendant to the alleged deprivation. The only allegation concerning Defendants Cates, Bonffil, Robinson, and Luna is collective: that the warden, captain, lieutenant, and sergeant "failed their roles to enforce the policies." (Doc. 1 at 3.) Plaintiff does not allege what any individual Defendant did or did not do. Simply grouping some or all defendants together and ascribing to them generalized assertions of overall conduct is insufficient. *See Gibson v. City of Portland*, 165 F.4th 1265, 1287-90 (9th Cir. 2026); *Leer*, 844 F.2d at 633. Plaintiff must allege facts showing how each named Defendant, through his or her own individual actions, violated Plaintiff's rights. *Iqbal*, 556 U.S. at 676.

Second, each named Defendant holds a supervisory position. Supervisors are not liable merely because employees under their supervision allegedly violated a policy. *Iqbal*, 556 U.S. at 676-77; *Jones*, 297 F.3d at 934. Plaintiff does not allege that any Defendant participated in or directed the conduct at issue, or that any Defendant knew that officers were bringing tobacco onto A-Yard, knew that discarded tobacco was being smoked in a manner that exposed Plaintiff to excessive ETS, or knew that the exposure was aggravating Plaintiff's asthma, and then failed to act. *Taylor*, 880

F.2d at 1045. Nor does Plaintiff identify any policy promulgated by a Defendant that was the moving force behind the alleged violation. *Redman*, 942 F.2d at 1446; *Waggy*, 594 F.3d at 713. To the contrary, Plaintiff alleges that the applicable policy prohibits tobacco. And the correctional officers who allegedly brought tobacco into CCI are not named as defendants.

Third, Plaintiff's allegations do not satisfy the objective component. Plaintiff does not allege when he was exposed to ETS, where he was exposed (for example, in his cell, housing unit, dayroom, or on the yard), how often or for how long he was exposed, or how near he was to inmates who were smoking. General allegations that inmates smoke discarded tobacco, creating a hazardous environment, do not plausibly show that Plaintiff himself was exposed to unreasonably high levels of ETS. *Helling*, 509 U.S. at 35. And while Plaintiff alleges shortness of breath affecting his asthma and blood pressure, he must allege facts connecting those symptoms to the exposure he describes.

Fourth, Plaintiff's allegations do not satisfy the subjective component. Plaintiff characterizes Defendants' conduct as "neglect" of policy and seeks damages for their "negligence." (Doc. 1 at 3, 6.) Negligence is insufficient to state an Eighth Amendment claim. *Farmer*, 511 U.S. at 835. Moreover, because Plaintiff acknowledges that CDCR has adopted a policy prohibiting tobacco (which "bear[s] heavily on the inquiry into deliberate indifference," *Helling*, 509 U.S. at 36), Plaintiff must allege facts showing that a specific Defendant knew the policy was being violated in a manner that posed an excessive risk to Plaintiff's health and deliberately disregarded that risk. *Farmer*, 511 U.S. at 837. That a tobacco ban is imperfectly enforced does not, without more, show deliberate indifference by any particular official.

Fifth, to the extent Plaintiff seeks relief for the emotional distress caused by his own relapse into smoking, an ETS claim concerns a prisoner's involuntary exposure to tobacco smoke. *See Helling*, 509 U.S. at 35-36. Plaintiff does not explain how any named Defendant caused him to resume smoking. If Plaintiff intends to pursue that theory, he must allege facts showing how a named Defendant's conduct caused that injury. *Leer*, 844 F.2d at 633.

Finally, Plaintiff is advised that exhibits may give a claim context, but they cannot substitute for factual allegations in the body of the complaint. The Court "will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim." *Davis v. Carlton*, No. 2:11-cv-01100-TLN-KJN P, 2013 WL 6512903, at *8 (E.D. Cal. Dec. 12, 2013).

Plaintiff will be granted leave to amend his complaint to cure these deficiencies, to the extent he can do so in good faith. In any amended complaint, Plaintiff should (1) identify the time period during which he was exposed to ETS at CCI; (2) describe where, how often, and to what extent he was exposed to tobacco smoke; (3) describe the symptoms or injuries he experienced as a result of that exposure; (4)

> specifically identify what each named Defendant did or did not do, including facts showing how each Defendant knew of the risk to Plaintiff's health and disregarded it; and (5) explain how each Defendant's conduct caused his injuries. As an example, if Plaintiff reported the tobacco smoke or its effect on his asthma to a particular Defendant, he should identify that Defendant, state when he made the report, and describe how that Defendant responded.
>
> **C. Screening Summary**
>
> Plaintiff will be directed to file a first amended complaint. In that amended complaint, Plaintiff may not assert a Fifth Amendment claim against state officials, and he must allege facts linking each named Defendant to the alleged Eighth Amendment violation. Moreover, Plaintiff must cure the deficiencies identified in this screening order.

(Doc. 9 at 4-10.) Because Plaintiff's complaint failed to state a claim upon which relief could be granted, he was ordered to file a first amended complaint, or a notice stating he intended to stand on his complaint as screened, or a notice of voluntary dismissal within 21 days. (*Id*. at 10-11. )

## III. DISCUSSION

### A. Legal Standards Concerning Dismissal

Rule 41(b) of the Federal Rules of Civil Procedure permits courts to involuntarily dismiss an action when a litigant fails to prosecute an action or fails to comply with a court order. *See* Fed. R. Civ. P. 41(b); *see also Applied Underwriters v. Lichtenegger*, 913 F.3d 884, 889 (9th Cir. 2019) (citations omitted); *Hells Canyon Pres. Council v. U.S. Forest Serv*., 403 F.3d 683, 689 (9th Cir. 2005) ("[T]he consensus among our sister circuits, with which we agree, is that courts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances").

The Local Rules, corresponding with Federal Rule of Civil Procedure 11, provide, "[f]ailure of counsel or of a party to comply with . . . any order of the Court may be grounds for the imposition by the Court of any and all sanctions . . . within the inherent power of the Court." Local Rule 110. "District courts have inherent power to control their dockets" and, in exercising that power, may impose sanctions, including dismissal of an action. *Thompson v. Housing Auth., City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action based on a party's failure to prosecute an action, obey a court order, or comply with local rules. *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a

court order to amend a complaint); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson*, 779 F.2d at 1423; *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B. Analysis**

Here, Plaintiff has failed to file a first amended complaint, or a notice indicating he wished to stand on his complaint as screened, or notice of voluntary dismissal, as directed in the First Screening Order. The screening order specifically identified the deficiencies in Plaintiff's complaint and provided the relevant legal standards applicable to his potentially cognizable claims. (*See* Doc. 9 at 4-10.) The Court cannot effectively manage its docket if Plaintiff ignores Court orders and ceases litigating his case. Thus, the Court finds that both the first and second factors—the public's interest in expeditious resolution of litigation and the Court's need to manage its docket—weigh in favor of dismissal. *Carey*, 856 F.2d at 1440.

The third factor weighs in favor of dismissal since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). Here, the Court's screening order provided Plaintiff with 21 days within which to file a first amended complaint or otherwise respond to the order (Doc. 9 at 10-11) and was served that same date — October 1, 2026. Nevertheless, Plaintiff has failed to comply with the Court's orders and the time to do so has now passed. Plaintiff's inaction amounts to an unreasonable delay in prosecuting this action resulting in a presumption of injury. Therefore, the third factor—a risk of prejudice to defendants—also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However,

"this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted). By failing to file a first amended complaint curing the deficiencies identified in the screening order, or to otherwise contact the Court, Plaintiff is not moving this case forward and is impeding its progress. As it stands, Plaintiff has failed to state any cognizable claim and the Court is required to dismiss his complaint. *See* 28 U.S.C. § 1915A(b). Thus, the fourth factor—the public policy favoring disposition of cases on their merits—weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

Finally, the Court's warning to a party that failure to obey the court's orders will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262. Here, in the Court's First Informational Order in Prisoner/Civil Detainee Civil Rights Case, issued October 31, 2025, Plaintiff was advised, in relevant part: "In litigating this action, the parties must comply with this Order, the Federal Rules of Civil Procedure ('Fed. R. Civ. P.'), and the Local Rules of the United States District Court, Eastern District of California ('Local Rules'), as modified by this Order. Failure to so comply will be grounds for imposition of sanctions which may include dismissal of the case. Local Rule 110; Fed. R. Civ. P. 41(b)." (Doc. 3 at 1.) That same order advised Plaintiff that "all Court deadlines are strictly enforced." (*Id*. at 5.) Further, in the First Screening Order, Plaintiff was advised as follows: "**If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute.**" (Doc. 9 at 11, emphasis in original.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance. Therefore, the fifth factor—the availability of less drastic sanctions—also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

In sum, because Plaintiff has not filed a first amended complaint, he has failed to state a claim upon which relief can be granted and the complaint should be dismissed. Additionally, Plaintiff has failed to comply with the Court's orders, and in doing so, has failed to prosecute this action. Whether Plaintiff has done so intentionally or mistakenly is inconsequential. It is

Plaintiff's responsibility to comply with the Court's orders and to prosecute this action. The Court declines to expend its limited resources on a case that Plaintiff has chosen to ignore.

## IV. CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court **HEREBY ORDERS** the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons given above, the Court **HEREBY RECOMMENDS** that this action be **DISMISSED** without prejudice for Plaintiff's failure to state a claim, failure to obey court orders, and failure to prosecute.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 28, 2026**

Erin Sny Castillo

UNITED STATES MAGISTRATE JUDGE